ABRAHAM LEDERMAN, as President of Teachers Union of the City of New York, Local 555 of the United Public Workers, et al., on Behalf of Themselves and Others Similarly Situated, Plaintiffs, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, Kings County, March 6, 1950.

*Witt & Cammer* for plaintiffs.

*John P. McGrath, Corporation Counsel* (*Michael A. Castaldi* and *Morris Weissberg* of counsel), for defendant.

BELDOCK, J. Plaintiffs move for an order punishing the board of education and William Jansen, superintendent of schools, for contempt of court for alleged violation of a final judgment of this court made by Mr. Justice HEARN on December 16, 1949. (See opinion, *Lederman* v. *Board of Education,* 196 Misc. 873.)

The said judgment which it is claimed was violated declared that " subdivision c of section 12a of the civil service law, *as implemented by* chapter 360, laws of 1949, known as *the Feinberg Law,* and that subdivision 2 of section 3022 of the education law, *added by the Feinberg Law* and that section 254 of chapter XV-B of the Rules of the Board of Regents adopted July 15, 1949, *pursuant to the Feinberg Law* are null, void and unconstitutional." (Emphasis added.) This judgment also enjoined and restrained the board of education of the City of New York from enforcing any of the provisions above referred to.

After the entry of the judgment and on January 4, 1950, Dr. Jansen, superintendent of schools, commenced an inquiry of a teacher in the school system with respect to this teacher's alleged membership in the Communist party. At this interview Dr. Jansen, among other questions, asked: " Are you now or were you ever a member of the Communist party? " The teacher refused to answer, claiming that Dr. Jansen had no right to ask this and related questions pertaining to his affiliation with a political party. The teacher stated that such question was generally in violation of his constitutional rights and particularly in violation of Mr. Justice HEARN's decision.

The president of the teachers union, who was present pursuant to a privilege accorded by the board of education, asked Dr. Jansen upon what authority he was conducting the inquiry. Dr. Jansen replied, " I am basing it on the general education law * * *."

Plaintiffs claim that any inquiry as to whether or not the teacher is or was a member of the Communist party is prohibited by the judgment of this court above referred to. On the other hand, Dr. Jansen and the board of education contend that there has been no violation of the judgment in that this inquiry was not made under the aforementioned sections of the Feinberg Law nor under the Board of Regents' rules, but under the general power to investigate and discharge teachers for misbehavior and unfitness, granted to the board of education under section 2523 of the Education Law. In effect, the defend-

ant urges that the right of the superintendent of schools under pre-existing statutes to inquire into the character and fitness of a member of the teaching staff remains unimpaired and unaffected by the judgment of December 16, 1949.

There is thus presented on this motion the single, narrow issue of whether the inquiry by Dr. Jansen as to membership of a teacher in the Communist party is prohibited by the aforementioned judgment. Conversely, there is not here presented the question of whether the inquiry is authorized under any other statute.

As was made manifest by the opinion of Mr. Justice HEARN, the Feinberg Law is an administrative statute which set up procedural machinery for the enforcement of section 12-a of the Civil Service Law (*Lederman* v. *Board of Education*, 196 Misc. 873, *supra*). The latter is a substantive law providing in subdivision c that an employee who belongs to an organization advocating the violent overthrow of the Government must be removed from office. The procedure outlined in subdivision 2 of the Feinberg Law (Education Law, § 3022, subd. 2) provided for the issuance of a list of subversive organizations by the Board of Regents and a presumption upon the hearing of charges against an accused teacher that he is disqualified from office if he be a member of an organization so listed.

It is significant to note that only the procedure set up by this provision of the Feinberg Law was declared unconstitutional by the judgment of this court. Other sections of the Civil Service Law and the Education Law were not challenged by plaintiffs in that proceeding. The judgment is, therefore, limited to a determination on the specific provisions of the Feinberg Law therein referred to which were invalidated.

Since the superintendent claims that the questions put to the teacher fall within the purview of section 2523 of the Education Law, it is well to refer to that section. The pertinent part thereof provides that persons employed in the teaching, examining and supervising service of the schools of our city " shall hold their respective positions during good behavior and efficient and competent service."

Preliminarily, plaintiffs contend that the superintendent's attempt to conduct the inquiry under said section 2523 is only a subterfuge and that it is a means of circumventing the mandate of this court in that the identical question has been prohibited by the ruling of Mr. Justice HEARN.

As to this claim, I am satisfied that there is no subterfuge on the part of the superintendent. Under any view it cannot

be held that the superintendent was acting under the invalidated provisions of the Feinberg Law. The Board of Regents has not issued a list of organizations found to be subversive. No hearings have been held, nor has any other action been taken as required by the provisions of the Feinberg Law. In short, the machinery set up by that law has not been invoked and, consequently, I conclude that the present inquiry by the superintendent has been instituted independently of the Feinberg Law and under general provisions of the Education Law unrelated to the procedural methods set up by the Feinberg Law.

Furthermore, from the language of the opinion of Mr. Justice HEARN it is clear that other sections of the Civil Service Law and of the Education Law were not passed upon in the proceeding attacking the Feinberg Law, which resulted in the judgment of this court. The limited scope of that determination is evident from the concluding statement in said opinion indicating that the court's decision was not intended to impair the power of school officials " under the other adequate provisions of existing law * * * to rid the school system of teachers found to be unfit." (*Lederman* v. *Board of Education, supra*, p. 885.) Similarly, in the decision of Mr. Justice SCHIRICK in the third department (*Thompson* v. *Wallin*, 196 Misc. 686, 695 ), we find a statement to the effect that school officials have the power to proceed against disloyal or unfit teachers notwithstanding the invalidity of the Feinberg Law. Mr. Justice SCHIRICK stated: " This should not be construed, of course, as in any way affecting the undoubted power of the State and its creation, the Board of Regents, to set up qualifications for school personnel. Any test bearing reasonable relation to the fitness of an applicant or incumbent to teach our children may of course be applied and administered. Manifestly such qualifications include not only scholastic attainment and technical skill. The State may go further, and reasonably require that those whom it employs to guide its young be men and women of sound character, and imbued with a love of our traditions and democratic heritage. Such tests, properly applied, do not contravene the Constitution. (*United Public Workers of America* v. *Mitchell*, 330 U. S. 75 [1946]; *Matter of Summers*, 325 U. S. 561 [1945]; *Hawker* v. *New York*, 170 U. S. 189 [1898].) "

It is nevertheless urged on this motion that this court determine the question of whether the superintendent has the right under any statute to ask the teacher the propounded questions.

In this connection, plaintiffs maintain that any questioning of a teacher as to membership in the Communist party is not only prohibited by the adjudication of Mr. Justice HEARN but is likewise prohibited under any other statute because '' the reasoning of the cases, the basis of the decisions, apply to any law under which an attempt is made to discipline a teacher on the basis of mere membership in an organization.'' In support of this position plaintiffs say that because of the '' broad sweeping '' opinion of Mr. Justice HEARN dealing with '' guilt by association '', this court should in effect look beyond the superintendent's claim that he is acting under another statute and adjudicate that in any event he has no right to ask the question of the teacher and pursue the inquiry under general principles of law.

I cannot follow this line of reasoning. After careful examination of the briefs of counsel and the authorities cited, and upon due deliberation, I am convinced that on this application to punish for contempt the legality of the inquiry made by the superintendent under section 2523 of the Education Law cannot be determined by me. An adjudication of that question on this motion would be obiter dictum and clearly beyond the scope of this application. Assuming, *arguendo,* that Dr. Jansen has no right to ask the propounded questions under section 2523, were I to grant the relief herein sought I would be punishing him not for a failure to comply with the mandate of Mr. Justice HEARN but rather for an alleged abuse of authority under section 2523 of the Education Law. This cannot be done on the present application and must be the subject of an independent adjudication of the superintendent's right to ask such questions under the Education Law.

As stated above, there is before me on this motion to punish for contempt solely the question of whether there has been a violation of the judgment of December 16, 1949. The movants have the burden of showing in a clear and convincing manner to the satisfaction of the court that the specific provisions of that mandate have been disobeyed and disregarded. This burden has not been sustained. On this issue, I find in favor of the defendant and hold that there has been no contempt and no violation of the judgment.

Accordingly, the motion to punish for contempt is denied. Submit order.